IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22–cv–00262–CNS–MDB

REX A. FREDERICKSON,

      Plaintiff,

v.

LARIMER COUNTY (CODE COMPLIANCE),
CHAD GREY (BUILDING AND CODE COMPLIANCE COORDINATOR),
MICHAEL J. WEISS, and other unknown actors or conspirators,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Maritza Dominguez Braswell**

      This matter is before the Court on "Defendants Larimer County (Code Compliance) and Chad Grey (Building and Code Compliance Coordinator)'s Combined Motion to Dismiss Plaintiff's Third Amended Complaint." (["Motion"], Doc. No. 44.) Plaintiff has responded in opposition to the Motion, and Defendants have replied.[1] (["Response"], Doc. No. 49; ["Reply"], Doc. No. 54.) The Motion has been referred to the undersigned, pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1, for a recommendation regarding disposition. (Doc. No. 46; *see* Doc. No. 60.) The Court has reviewed the parties' briefing, the case file, and the applicable law. For the reasons set forth herein, it is **RECOMMENDED** that the Motion (Doc. No. 44) be **GRANTED**.

---

[1] The remaining defendant, Michael J. Weiss, has not yet been served. Mr. Frederickson's failure to timely serve Defendant Weiss, in accordance with Rule 4(m), is addressed in an Order to Show Cause, issued contemporaneously with this Recommendation.

## SUMMARY FOR *PRO SE* PLAINTIFF

The Court is recommending that your claims against Larimer County (Code Compliance) and Chad Grey be dismissed. *First*, Larimer County Code Compliance Unit is not a separate body that can be sued. *Second*, to the extent you are asserting claims against Larimer County, the law requires identification of a county policy or practice that caused the alleged injuries, but your complaint does not identify any such policy or practice. *Third*, and to the extent you are claiming a violation of due process rights, the Court is recommending dismissal of those claims, because your complaint does not identify a liberty or property interest that is protected by the United States Constitution. *Fourth*, the Court is recommending that the remainder of your claims against Chad Grey and Larimer County (Code Compliance) be dismissed, because the law requires pleading more than what your complaint pleads here.

However, the Court is recommending that some of your claims be dismissed without prejudice. Dismissal without prejudice would allow you to amend your complaint, if you have sufficient information with which to amend. This is only a summary of the Court's Recommendation to the presiding judge. The complete Recommendation is set forth below, including information about your right to object to this Recommendation within a set period of time.

## STATEMENT OF THE CASE

According to the Third Amended Complaint, *pro se* Plaintiff Rex A. Frederickson ["Mr. Frederickson"] is a Colorado citizen who, on account of a prior criminal conviction, must register as a sex offender under the Illinois Sex Offender Registration Act ["ISORA"], 730 ILCS 150/1 *et seq.*, and the Colorado Sex Offender Registration Act ["CSORA"], Colo. Rev. Stat. §§

16-22-101 *et seq.*. (Doc. No. 41 at ¶¶ 6, 13, 15-17.) ISORA and CSORA obligate Mr. Frederickson to periodically reregister as a sex offender. (*Id.*) In the event that Mr. Frederickson "lacks a fixed residence," ISORA and CSORA require that he report to local law enforcement, in person, at least every three months. (*Id.* at ¶¶ 16-17.) Mr. Frederickson claims to have a "fundamental liberty interest" in being able to fulfill his sex offender registration obligations "accurately and timely," so that he "may avoid arrest." (*Id.* at ¶ 25.)

Mr. Frederickson alleges that he currently resides in Wellington, Colorado, where he works from his rental home as the Marketing and Programing Director and morning DJ of a Chicago-based radio station. (*Id.* at ¶¶ 17, 35.) He alleges that he "depends on the security and stability of his domicile to ensure continued and uninterrupted service to the network" to be able to perform his job. (*Id.* at ¶ 17.)

Mr. Frederickson complains that, notwithstanding his need for stable housing to be able to work and avoid arrest, "Defendants," together with other "unknown actors or conspirators," have engaged in a multi-year "campaign" to deprive him of a place to live by means of "threat, extortion, and harassment." (*Id.* at ¶¶ 20, 28, 30, 32, 34-36.) Mr. Frederickson alleges that Defendants' actions have resulted in his eviction "not once but twice at 2 separate locations," and he claims that Defendants are "threatening to do so yet a third time, at [his] current abode." (*Id.* at ¶ 1.)

Specifically, Mr. Frederickson alleges that, on September 30, 2020, the Larimer County Building and Code Compliance Coordinator, Defendant Chad Grey, "[t]hreatened to knock down buildings" that Mr. Frederickson erected on his landlord's property located at 2020 N. Collage Ave., Fort Collins, Colorado, 80524. (*Id.* at ¶¶ 3, 21.) Mr. Frederickson alleges that Defendant

Grey made "false statements and claims" to the landlord that Mr. Frederickson "was not allowed to be on the property," even though the Larimer County Sheriff had previously "certified and physically verified" that Mr. Frederickson was a "legal occupant" of the rental property. (*Id.* at ¶¶ 1, 7, 21.) Mr. Frederickson alleges that Defendant Grey explicitly threatened to "inconvenience" his landlord, unless the landlord "complied with Chad Greys [sic] Demands," and "forced [Mr. Frederickson] to move." (*Id.* at ¶ 21.) Mr. Frederickson further alleges that Defendant Grey "threatened to tow the property of Mr. Frederickson if Mr. Frederickson did not comply." (*Id.*) Mr. Frederickson alleges that he was ultimately "forced to relocate from 2020 N Collage Ave. . . . due to the combined efforts and conspiracy by the Defendants," despite "having rented and used the property in a lawful manner." (*Id.* at ¶¶ 3, 28.)

Mr. Frederickson further alleges that, after he then moved to a second rental property located at 603 W. Willox in Fort Collins, Colorado, on December 7, 2020, nonparty Dustin Kenneth[2] "called Chad Grey on the phone and reported that Mr. Frederickson was living illegally at the location[.]" (*Id.* at ¶¶ 5, 33.) Mr. Frederickson alleges that Defendant Grey then "threaten[ed]" to "fine" the second landlord, unless and until the landlord took "legal action to evict Mr. Frederickson" from the 603 W. Willox property. (*Id.* at ¶ 23.) Mr. Frederickson alleges that Defendant Grey once again "legally challenged and outrageously claimed" that Mr. Frederickson "was not allowed to be on the property," which Mr. Frederickson insists was "[c]ontrary to the verification by the Larimer County Sheriff[.]" (*Id.* at ¶¶ 23, 26.) According to

---

[2] Although Dustin Kenneth was initially named as a defendant in this case, all claims against that individual have been dismissed, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). (*See* Doc. No. 70.)

the Third Amended Complaint, "due to the combined efforts and conspiracy by the Defendants," Mr. Frederickson was forced to relocate from the second rental property as well. (*Id.* at ¶ 30.)

Mr. Frederickson laments that his "reality has been turned upside down" by these events. (*Id.* at ¶ 8.) He alleges that "Defendants" continue to "harass" him at his current rental home. (*Id.* at ¶ 35.) He claims to live "in constant fear of harassment," as well as in "imminent fear of losing his home and possessions." (*Id.* at ¶¶ 8, 10.) He also claims to live in fear of arrest for violating state sex offender registration laws. (*Id.* at ¶ 26.) He alleges numerous "harms and injuries" arising from Defendants' "abuse of the[ir] official positions," including "financial stress, loss of work, loss of investments, loss of sleep, deprived of general feeling of peace, damage to equipment, emotional distress, fear of homelessness, [and] fear to leave his property unattended[.]" (*Id.* at ¶¶ 10, 17(f).)

Based on these allegations, on January 31, 2022, Mr. Frederickson commenced this federal court action by filing a *pro se* complaint. (Doc. No. 1.) Mr. Frederickson thereafter amended his pleading, on February 16, 2022 (*see* Doc. No. 22), and again, on May 2, 2022, ultimately asserting ten claims against the named Defendants and "other unknown actors and conspirators." (Doc. No. 41 at ¶¶ 18-36.) Although Mr. Frederickson organizes his Third Amended Complaint into ten separate causes of action, the claims involve overlapping factual allegations and legal theories. Mr. Frederickson alleges violations of his First, Fifth, and Fourteenth Amendment rights, as well as a conspiracy to violate his constitutional rights, pursuant to 42 U.S.C. § 1983. (Doc. No. 41 at ¶¶ 1, 18-20, 22, 24, 27-31, 34.) In addition, Mr. Frederickson alleges violations of his statutory rights, pursuant to 42 U.S.C. §§ 1985 and 1986. (*Id.* at ¶¶ 1, 18, 22, 24, 29, 31, 34.) Finally, Mr. Frederickson alleges violations of Colorado state

law. (*Id.* at ¶ 36.) In the Third Amended Complaint, Mr. Frederickson requests declaratory and injunctive relief, as well as monetary damages. (*Id.* at 16-17.)

Defendants Larimer County (Code Compliance) and Chad Grey now move to dismiss Mr. Frederickson's claims against them, in their entirety, pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 44 at 1.) In their Motion, Defendants make five arguments: (1) that the Larimer County Code Compliance Unit is not a suable entity; (2) that Mr. Frederickson has failed to state a cognizable *Monell* claim against Larimer County; (3) that all of Mr. Frederickson's claims are inadequately pleaded; (4) that Mr. Frederickson has failed to establish that he was "deprived of property" without due process; and (5) that Chad Grey is entitled to qualified immunity as to all claims. (*Id.* at 3.)

## STANDARDS OF REVIEW

### I.   *Pro Se* **Plaintiff**

Mr. Frederickson is proceeding *pro se*. The Court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding the allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see Whitney v. New Mexico*, 113 F.3d

1170, 1173–74 (10th Cir. 1997) (stating that a court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). The plaintiff's *pro se* status does not entitle him to an application of different rules. *Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

## II.    Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the Court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely

conclusory. *Id*. at 679–81. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

That being said, the Court need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc., v. Tex. Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

In evaluating a Rule 12(b)(6) motion to dismiss, the Court typically may not look beyond the pleadings. *Casanova v. Ulibarri*, 595 F.3d 1120, 1125 (10th Cir. 2010). "If, on a motion under Rule 12(b)(6), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." *Johnson v. Spencer*, 950 F.3d 680, 705 (10th Cir. 2020) (quoting Fed. R. Civ. P. 12(d)) (alterations omitted). "Pleadings," for purposes of a Rule 12(b)(6) motion to dismiss, include attachments to the complaint, documents incorporated into the complaint by reference, and information subject to judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Gee v.*

*Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010); *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

## III.     Qualified Immunity

"Qualified immunity is an affirmative defense to a section 1983 action, providing immunity from suit from the outset." *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001) (quoting *Adkins v. Rodriguez*, 59 F.3d 1034, 1036 (10th Cir. 1995)). "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Ullery v. Bradley*, 949 F.3d 1282, 1289 (10th Cir. 2020) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Once a defendant has asserted a qualified immunity defense, the burden shifts to the plaintiff to establish that: (1) the defendant violated a constitutional right; and (2) the right was "clearly established" at the time of the defendant's alleged misconduct. *Perea v. Baca*, 817 F.3d 1198, 1202 (10th Cir. 2016) (citing *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). "[I]f the plaintiff fails to establish either prong of the two-pronged qualified-immunity standard, the defendant prevails on the defense." *A.M. v. Holmes*, 830 F.3d 1123, 1134-35 (10th Cir. 2016); *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 877-78 (10th Cir. 2014) ("[T]he record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants are entitled to qualified immunity.") (internal quotation marks omitted).

"Although qualified immunity defenses are typically resolved at the summary judgment stage, district courts may grant motions to dismiss on the basis of qualified immunity." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). "Asserting a qualified immunity defense via a

Rule 12(b)(6) motion, however, subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Id.* (quoting *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004)); *see Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) ("At [the motion to dismiss] stage, it is the defendant's conduct *as alleged in the complaint* that is scrutinized for objective legal reasonableness.") (internal quotation marks omitted) (emphasis in original). "In resolving a motion to dismiss based on qualified immunity, the court considers (1) whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of [the] defendant's alleged misconduct." *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013) (quoting *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011)) (internal quotation marks omitted). The Court has "discretion to decide which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Brown*, 662 F.3d at 1164 (quoting *Pearson*, 555 U.S. at 236) (alterations omitted).

## ANALYSIS

### I.     The Section 1983 Claims

42 U.S.C. § 1983 provides that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." Section 1983 creates a "species of tort liability" that provides relief to persons deprived of rights secured to them by the United States Constitution. *Carey v. Piphus*, 435 U.S. 247, 253 (1978). To state a claim under 42 U.S.C. § 1983, Mr. Frederickson must establish that (1) he was deprived of a right secured by the Constitution or federal law, and (2) the deprivation was caused

by a person or persons acting under color of state law. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1143 (10th Cir. 2014).

### A. Claims Against Larimer County Code Compliance Unit

Mr. Frederickson asserts claims against "Larimer County (Code Compliance)." (Doc. No. 41 at 1.) It is unclear whether Mr. Frederickson intends to sue Larimer County, the Larimer County Code Compliance Unit, or both. To the extent he seeks to sue Larimer County Code Compliance Unit, the Court agrees with Defendants that his claims cannot proceed because that unit is not a separate body that can be sued. (*See* Doc. No. 44 at 4-5.)

Under Colorado law, "municipalities and counties, not their various subsidiary departments, exist as 'bodies corporate and politic' empowered to 'sue and be sued.'" *Stump v. Gates*, 777 F. Supp. 808, 816 (D. Colo. 1991), *aff'd by* 986 F.2d 1429 (10th Cir. 1993) (citing Colo. Rev. Stat. §§ 31-15-101(1)(a) and 30-11-101(1)(a)); *see, e.g.*, *Lindsey v. Thomson*, 275 F. App'x 744, 777 (10th Cir. 2007) (unpublished) (observing that sheriff's departments and police departments are not usually considered legally suable entities); *see also White v. Utah*, 5 F. App'x 852, 853 (10th Cir. 2001) ("The law of the state in which the district court sits governs the capacity of a governmental entity to sue or to be sued."). The Larimer County Code Compliance Unit is not a separate entity from Larimer County, and therefore, is not a "person" under 42 U.S.C. § 1983. *See Stump*, 777 F. Supp. at 816 (concluding municipal police department and county coroner's office were not "§ 1983 persons"); *Brown v. Chaffee Cnty.*, No. 19-cv-01301-CMA-STV, 2019 WL 8723210, at *5 (D. Colo. Dec. 19, 2019) ("The Review Board is not a suable person under § 1983 because it 'does not exist as a separate legal entity,' independent of Chaffee County itself."); *Lewis v. Denver Fire Dep't*, No. 09-cv-0004-RBJ-MJW, 2013 WL

24279, at *5 (D. Colo. Jan. 2, 2013) ("The City and County of Denver, not the Denver Fire Department, is the proper defendant under § 1983."). As such, because Larimer County Code Compliance Unit is not a proper defendant, Mr. Frederickson's claims against it must be dismissed with prejudice. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) (stating that dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile).

### B. Claims Against Larimer County (*Monell* Liability)

To the extent Mr. Frederickson seeks to sue Larimer County, that suit is proper so long as Mr. Frederickson states a viable claim. Larimer County "may be held liable under [§ 1983] if the [county] itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978)). But, under § 1983, county liability cannot be imposed "simply because [the county] employs a person who violated a plaintiff's federally protected rights." *Jenkins v. Woods*, 81 F.3d 988, 993 (10th Cir. 1996) (citing *Monell*, 436 U.S. at 694); *see Connick*, 563 U.S. at 60 ("[U]nder § 1983, local governments are responsible only for their own illegal acts."). Rather, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013) (quoting *Monell*, 436 U.S. at 694).

To state a viable *Monell* claim against a county, a plaintiff must adequately allege: (1) "the existence of a [county] policy or custom;" and (2) "that there is a direct causal link between

the policy or custom and the injury alleged." *Jenkins*, 81 F.3d at 993 (citing *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). A "policy or custom" can take the form of "(1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused." *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (quoting *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189-90 (10th Cir. 2010)) (internal quotation marks omitted). Causation is established if the challenged policy or practice is shown to be "closely related to the violation of the plaintiff's federally protected right." *Schneider*, 717 F.3d at 770. "This requirement is satisfied if the plaintiff shows that the [county] was the 'moving force' behind the injury alleged." *Id.* (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)).

Here, the Third Amended Complaint does not allege any custom, policy, or practice that was the "moving force" behind the alleged deprivations of Mr. Frederickson's constitutional rights. Indeed, Mr. Frederickson seems to suggest that he was aligned with Larimer County, and it was the action taken by the individual Defendants that was out of step. (*See* Doc. No. 41 at ¶ 7 ("Defendant Chad Grey has repeatably stated and insisted that Mr. Frederickson is not an occupant of the properties contradicting the Larimer County Sheriff without authority to do

so.").) Mr. Frederickson does not identify any decision made by a Larimer County official who held final policymaking authority, allege the ratification of subordinates' decisions by such an official, or claim that Larimer County failed to adequately train or supervise its employees. Without such allegations, Mr. Frederickson cannot proceed on his § 1983 claims against Larimer County. Accordingly, Mr. Frederickson's § 1983 claims against Larimer County should be dismissed without prejudice.[3] *See Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (holding prejudice should not attach to dismissal when a plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues").

---

[3] While not entirely clear, Mr. Frederickson appears to assert §1983 claims against Defendant Chad Grey, in his individual capacity, as well as in his official capacity as the Larimer County Code Compliance Coordinator. (*See* Doc. No. 41 at ¶ 14 ("Chad Grey at all times was acting under the color of state and federal laws[.]").) "Suing individual defendants in their official capacities under § 1983 . . . is essentially another way of pleading an action against the county or municipality they represent." *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010) (citing *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978); *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998)).There is "long-standing authority for the notion that individuals sued in their official capacities are redundant if the governmental entity for whom they work is also a defendant." *Lyall v. City of Denver*, 319 F.R.D. 558, 569 (D. Colo. 2017); *see Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) ("There is no longer a need to bring official-capacity claims against local government officials, for under *Monell* . . . local government units can be sued directly for damages and injunctive or declaratory relief."); *see also Cox v. Glanz*, 800 F.3d 1231, 1254 (10th Cir. 2015) (observing that suit against a county sheriff, in his official capacity as county sheriff, is "equivalent" to suit against the county, itself). Here, Mr. Frederickson's § 1983 claims against Defendant Grey, in his official capacity, are duplicative of his § 1983 claims against Larimer County. Therefore, because Mr. Frederickson has failed to plausibly allege a § 1983 claim against Larimer County, his official capacity claims against Defendant Grey should be dismissed as well. *See Montoya v. City & Cnty. of Denver*, 2021 WL 1244264, at *24 n.18 (D. Colo. Mar. 4, 2021) ("Since the City and County of Denver is the real party in interest and is named as a defendant, Mr. Montoya's official capacity claims against Defendant Officers are duplicative and are therefore dismissed."); *Hays v. Ellis*, 331 F. Supp. 2d 1303, 1306 n.2 (D. Colo. 2004) ("[T]he dismissal of the City of Boulder requires the dismissal of the defendant officers in this case named in their 'official capacities.'").

### C. The Remaining § 1983 Claims

Mr. Frederickson alleges that Defendant Grey conspired to violate, and did violate, his due process rights under the Fifth and Fourteenth Amendments, as well as his free speech rights under the First Amendment. (Doc. No. 41 at ¶¶ 1, 18-35.) Invoking qualified immunity, Defendant Grey argues that Mr. Frederickson has failed to allege sufficient contextual facts to provide him with fair notice of the claims, or to demonstrate a plausible entitlement to relief. (Doc. No. 44 at 8-16.)

The Federal Rules of Civil Procedure mandate that a complaint contain "(1) a short and plain statement of the grounds for the court's jurisdiction, . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought[.]" Fed. R. Civ. P. 8(a); *see Blazer v. Black*, 196 F.2d 139, 144 (10th Cir. 1952) ("[T]he only permissible pleading is a short and plain statement of the claim showing that the pleader is entitled to relief on any legally sustainable grounds."). The requirements of Rule 8 guarantee "that defendants enjoy fair notice of what the claims against them are and the grounds upon which they rest." *TV Commc'ns Network, Inc. v. ESPN, Inc.*, 767 F. Supp. 1062, 1069 (D. Colo. 1991). "Prolix, vague, or unintelligible pleadings violate Rule 8." *Fletcher v. Williams*, No. 21-cv-02125-PAB-NRN, 2022 WL 3153906, at *2 (D. Colo. Aug. 8, 2022).

While the Rule 8 pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The complaint must contain enough allegations of fact, taken as true, to state a claim to relief that is "plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when

the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 665. A "formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555.

"[T]he degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context[.]" *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008). "[C]omplaints in § 1983 cases . . . pose a greater likelihood of failures in notice and plausibility because they typically include complex claims against multiple defendants." *Id.* at 1249. "Therefore, in § 1983 cases, a plaintiff must make clear exactly *who* is alleged to have done *what* to *whom,* to provide each individual with fair notice as to the basis of the claims against him[.]" *VanZandt v. Okla. Dep't of Human Servs.*, 276 F. App'x 843, 847 (10th Cir. 2008) (quoting *id.* at 1250) (emphasis in original) (internal quotation marks omitted). "[T]o state a claim in federal court, a [*pro* se] complaint must explain what each defendant did to [the plaintiff], when the defendant did it, how the defendant's actions harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).

## 1. Whether the due process claims satisfy pleading requirements and survive the qualified immunity challenge.

In the Third Amended Complaint, Mr. Frederickson alleges due process violations under the Fifth and Fourteenth Amendments. (Doc. No. 41 at ¶¶ 18-34.) However, the Fifth Amendment is applicable to the federal government only, not the individual states. *Dusenbery v. United States*, 534 U.S. 161, 167 (2002); *Ward v. Anderson*, 494 F.3d 929, 932 n.3 (10th Cir. 2007) (noting that "only the Fourteenth Amendment imposes a due process requirement on state officials"). In this case, Mr. Frederickson does not allege any facts implicating the federal

government. As such, Mr. Frederickson's Fifth Amendment claims should be dismissed without prejudice. *See Wilson v. City of Lafayette*, No. 07-cv-01844-EWN-KLM, 2008 WL 4197742, at *6 (D. Colo. Sept. 10, 2008) (dismissing Fifth Amendment due process claims, where the plaintiff averred no facts relating to the federal government).

The Fourteenth Amendment provides: "No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. The Due Process Clause encompasses two distinct forms of protection: (1) procedural due process, which requires a state to employ fair procedures when depriving a person of a protected interest; and (2) substantive due process, which guarantees that a state cannot deprive a person of a protected interest for certain reasons. *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998) (citation omitted). In his Third Amended Complaint, Mr. Frederickson appears to allege both procedural and substantive due process violations.

"Procedural due process ensures that individuals are entitled to certain procedural safeguards before a state can deprive them of life, liberty or property." *Becker v. Kroll*, 494 F.3d 904, 918 n.8 (10th Cir. 2007) (citing *Albright v. Oliver*, 510 U.S. 266, 275 (1994)). "To set forth an actionable procedural due process claim, a plaintiff must demonstrate: (1) the deprivation of a liberty or property interest and (2) that no due process of law was afforded." *Ripley v. Wyo. Med. Ctr., Inc.*, 559 F.3d 1119, 1122 (10th Cir. 2009) (quoting *Stears v. Sheridan Cnty. Mem'l Hosp. Bd. of Trs.*, 491 F.3d 1160, 1162 (10th Cir. 2007)).

"Claims for 'substantive due process' find their basis in the Fourteenth Amendment's protections against arbitrary government power." *Lindsey v. Hyler*, 918 F.3d 1109, 1115 (10th Cir. 2019) (citing *Browder v. City of Albuquerque*, 787 F.3d 1076, 1078-80 (10th Cir. 2015)). A

substantive due process violation can be established by either: (1) "legislative acts that infringe on a fundamental right;" or (2) "official conduct that deprives a person of life, liberty, or property in a manner so arbitrary as to shock the judicial conscience." *Id.* (citation omitted).

To prevail on any type of due process claim—whether procedural or substantive—a plaintiff must first establish that a defendant's actions deprived the plaintiff of a protectible property or liberty interest. *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006); *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 &n.2 (10th Cir. 2000). "Protected liberty interests may arise from two sources—the Due Process Clause itself and the laws of the States." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (internal quotation marks omitted). The Due Process Clause "specially protects . . . fundamental rights and liberties." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). A fundamental liberty is one that is "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty." *Id.* at 720-21. "For state law to create a liberty interest, it must establish substantive predicates to govern official decisionmaking and mandate an outcome when relevant criteria have been met." *Elwell v. Byers*, 699 F.3d 1208, 1214 (10th Cir. 2014). If a "state law creates a mandatory procedure but does not guarantee a particular substantive outcome, it does not confer a protected liberty interest." *Id.*

Here, Mr. Frederickson alleges that he has "a fundamental liberty interest in the State permitting him to register accurately and timely, as is required of him by [state sex offender registration laws], so that he may avoid arrest." (Doc. No. 41 at ¶ 25.) However, Mr. Frederickson provides no explanation as to how compliance with sex offender registration laws implicates a "deeply rooted" fundamental right. Moreover, the Tenth Circuit has strongly

suggested that it does not. *See Millard v. Camper*, 971 F.3d 1174, 1185 (10th Cir. 2020) ("The Appellees fail to show how CSORA violated their fundamental rights. They cite no case holding that compliance with a sex-offender registration law implicates a "deeply rooted" fundamental right. Rather, all courts to have considered the issue have concluded otherwise."); *accord Litmon v. Harris*, 768 F.3d 1237, 1242 (9th Cir. 2014); *Does v. Munoz*, 507 F.3d 961, 963-65 (6th Cir. 2007); *Doe v. Moore*, 410 F.3d 1337, 1345-46 (11th Cir. 2005). Accordingly, Mr. Frederickson has not shown that a fundamental liberty interest is at stake here. *See Chavez v. Martinez*, 538 U.S. 760, 775-76 (2003) (stating plaintiff must put forth "a 'careful description' of the asserted fundamental liberty interest" at stake; "vague generalities . . . will not suffice"); *see also ETP Rio Rancho Park, LLC v. Grisham*, 517 F. Supp. 3d 1177, 1230 (D.N.M. 2021) (holding "vague and conclusory allegations" regarding a "fundamental right" to own a trampoline business insufficient to state a claim for relief).

In claiming a protectible liberty interest to register as a sex offender, Mr. Frederickson references ISORA and CSORA. (*Id.* at ¶¶ 15-17.) The statute statutes cited by Mr. Frederickson set forth the mandatory acts that must be taken by individuals who are required by state law to register as sex offenders; neither statute mandates that "a particular outcome *must* follow" if an individual wishes to register as a sex offender. *See Beley v. City of Chicago*, 901 F.3d 823 (7th Cir. 2018) (rejecting homeless sex offender plaintiffs' assertion that ISORA created a protectible liberty interest to register as a sex offender, because the statute's registration requirement "burdens sex offenders; it is not, as the plaintiffs contend, an aspect of their liberty"); *see also Elwell*, 699 F.3d at 1214-15 (holding state statute requiring notice to foster parents prior to removal of foster children did not create a protectible liberty interest, because the statute did not

"prohibit the ultimate removal of a child if certain requirements [were] satisfied; it simply mandate[d] procedures that must be followed prior to removal"). At most, ISORA and CSORA afford Mr. Frederickson a right to process, which alone "is not a constitutionally cognizable liberty interest." *See PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1200 (10th Cir. 2010); *Elwell*, 699 F.3d at 1214 ("[W]hen state law creates a mandatory procedure but does not guarantee a particular substantive outcome, it does not confer a protected liberty interest."). Accordingly, Mr. Frederickson has not demonstrated a protectible liberty interest arising from the sex offender registration statutes.

The Court next considers whether Mr. Frederickson has demonstrated a constitutionally protectible property interest at stake. Property interests "are not created by the Constitution," but rather, "are created and . . . defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972); *see also Milcor I, LLC v. Luers*, 764 F. App'x 747, 753 (10th Cir. 2019) ("In order to create a property interest, the state statute or regulation must give the recipient a legitimate claim of entitlement to the benefit allegedly deprived.") (internal quotation marks, citations, and alterations omitted). A property interest is more than an abstract need or desire, or a mere unilateral expectation; rather, it is "a legitimate claim of entitlement" to some benefit. *Roth*, 408 U.S. at 577. "The hallmark of property . . . is an individual entitlement grounded in state law, which cannot be removed except for cause." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982). "Detailed procedures in a state statute or regulation," however, "are not, by themselves, sufficient to create a property interest." *Greene v. Barrett*, 174 F.3d 1136, 1140

(10th Cir. 1999). The claimed property interest must be "specific and presently enforceable." *Doyle v. Okla. Bar Ass'n*, 998 F.2d 1559, 1569 (10th Cir. 1993).

In this case, Mr. Frederickson does not claim a property interest in sex offender registration, nor plausibly allege any other "legitimate claim of entitlement" to a benefit implicating the Fourteenth Amendment's due process protections. *Roth*, 408 U.S. at 577. Throughout his Third Amended Complaint, Mr. Frederickson alleges that Defendants "depriv[ed]" him of a place to live, alleging also that he has "a fundamental right to property in the State of Colorado." (Doc. No. 41 at ¶¶ 1, 18-19.) However, Mr. Frederickson makes no allegations suggesting that he ever had ownership rights, or contractual leasing rights, to the rental properties at issue. *See ComAv, LLC v. S. Cal. Logistics Airport Auth.*, EDCV16-1267 PSG (PLAx), 2017 WL 6017354, at *6-7 (C.D. Cal. Mar. 2, 2017) (concluding month-to-month tenancy created by virtue of holding over without the landlord's consent did not create a constitutionally protected interest to remain in possession of the premises indefinitely). Any alleged financial or reputational harm resulting from Mr. Frederickson's forced relocation from the rental properties (*e.g.,* "financial stress, loss of work, loss of investments") is not a protectible property interest. *See Jensen v. Redevelopment Agency of Sandy City*, 998 F.2d 1550, 1558 (10th Cir. 1993) ("Damage to one's reputation alone . . . is not enough to implicate due process protections."); *Crow v. Village of Ruidoso*, No. CIV-20-01-SPS, 2017 WL 3393964, at *7 (D.N.M. Aug. 7, 2017) ("Plaintiffs do not show that they have a constitutionally protected property interest in insurance payouts or premiums. . . . Though Plaintiffs bemoan the fact that Sgt. Frost's report impacted their insurance claims, their recourse lies not in a due process claim."). To the extent that Mr. Frederickson raises concerns about his personal property, he

makes no allegations from which to infer an actual deprivation of those items. Rather, Mr.

Frederickson's allegations suggest, at most, that he fears future loss. Such concerns do not

implicate the Fourteenth Amendment. *See Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir.

2007) ("[I]t is only after the plaintiff first demonstrates the existence and deprivation of a

protected property interest that the plaintiff is constitutionally entitled to an appropriate level of

process.").

In sum, Mr. Frederickson has not shown a constitutionally protectible liberty or property

interest that is at stake in this case. As such, Mr. Frederickson has failed to plausibly allege a

violation of his Fourteenth Amendment rights. *Steffey*, 461 F.3d at 1221. Therefore Defendant

Grey is entitled to qualified immunity on Mr. Frederickson's Fourteenth Amendment claims. *See*

*Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001) ("If the plaintiff

fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified

immunity."); *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995) ("[A] defendant is

entitled to qualified immunity if the plaintiff fails to show a violation of a constitutional right at

all.").

## 2. Whether the first amendment claims satisfy the pleading requirements and survive the qualified immunity challenge.

Mr. Frederickson alleges that "Defendants" violated his First Amendment free speech

rights. (Doc. No. 41 at ¶ 35.) The basis for this claim is not entirely clear, though it appears that

Mr. Frederickson is alleging that Defendants engaged in a series of acts that "interfer[ed]" with

his ability to perform his radio broadcast work. (*Id.* at ¶¶ 17, 35.)

The First Amendment, applicable to the States through the Fourteenth Amendment,

provides that "Congress shall make no law . . . abridging the freedom of speech." *Virginia v.*

*Black*, 538 U.S. 343, 358 (2003); *see* U.S. Const. amend. I. "The hallmark of the protection of free speech is to allow 'free trade in ideas'—even ideas that the overwhelming majority of people might find distasteful or discomforting." *Black*, 538 U.S. at 358 (citations omitted). The First Amendment affords protection to symbolic or expressive conduct as well as to actual speech. *Id.* There are some exceptions in which the government can regulate speech. *Id.* The type of speech that is allegedly being suppressed determines the type of legal test a court is to apply. *Id.* at 358-60.

Here, the Court finds that Mr. Frederickson has failed to plausibly allege a First Amendment claim against Defendant Grey. Mr. Frederickson states that "Defendants" used "tricks and deception" to "interfer[e]" with his "right of free speech and expression." (Doc. No. 41 at ¶ 35.) However, Mr. Frederickson does not identify the type of speech that was allegedly "interfer[ed]" with, and he provides no details concerning the nature of this interference, or how Defendant Grey, in particular, was involved. As such, Mr. Frederickson has failed to plausibly allege that Defendant Grey violated his First Amendment rights. *See Robbins*, 519 F.3d at 1250 ("Given the complaint's use of either the collective term "Defendants" or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed."); *Tracy v. Stephens*, No. 1:21-cv-000152-TC-CMR, 2022 WL 17573737, at *7 (D. Utah Aug. 8, 2022), *report and recommendation adopted by* 2022 WL 16570863 (D. Utah Nov. 1, 2022) ("Plaintiffs summarily state their claims and a legal conclusion that their First Amendment rights were violated. Federal pleading requires more."). Therefore,

Defendant Grey is entitled to qualified immunity with respect to this claim. *See Holland*, 268 F.3d at 1186.

### 3. Whether the § 1983 conspiracy claims satisfy pleading requirements and survive the qualified immunity challenge.

Mr. Frederickson also alleges that Defendants conspired to violate his constitutional rights. (Doc. No. 41 at ¶ 21.) "Allegations of conspiracy may . . . form the basis of a § 1983 claim." *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1988). "[T]o recover under a § 1983 conspiracy theory, a plaintiff must plead and prove not only a conspiracy, but also an actual deprivation of rights; pleading and proof of one without the other will be insufficient." *Dixon v. City of Lawton*, 898 F.2d 1443, 1449 (10th Cir. 1990). Here, and for the reasons set forth above, Mr. Frederickson has failed to plausibly allege any violation of his constitutional rights, and therefore, his conspiracy claim under § 1983 is properly dismissed on that basis alone. *See Thompson v. City of Lawrence, Kan.*, 58 F.3d 1511, 1517 (10th Cir. 1995) (affirming the dismissal of a § 1983 conspiracy claim, where the plaintiff failed to establish the existence of an underlying constitutional violation). However, Mr. Frederickson has also failed to allege sufficient facts to establish the existence of a conspiracy.

An actionable conspiracy "requires at least a combination of two or more persons acting in concert and an allegation of a meeting of the minds, an agreement among the defendants, or a general conspiratorial objective." *Banks v. Opat*, 814 F. App'x 325, 337 (10th Cir. 2020) (citation omitted). In pleading the conspiracy element, "a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants." *Tonkovich*, 159 F.3d at 533. "Mere conclusory assertions about the existence of a conspiratorial agreement are

insufficient to state a claim." *Moses-El v. City & Cnty. of Denver*, 376 F. Supp. 3d 1160, 1175 (D. Colo. 2019) (citation omitted).

The Third Amended Complaint contains the following allegations concerning a conspiracy: (1) that nonparty Dustin Kenneth "ha[d] contact with Chad Grey and admitted to having done given [sic] a false report to Chad Grey;" (2) that "Defendants," along with "unknown actors or conspirators," "conspired to deprive Mr. Frederickson of his property by way of threat, extortion, and harassment;" (3) that Mr. Frederickson "was forced to relocate" from two separate rental properties "due to the combined efforts and conspiracy by the Defendants;" (4) that "Dustin Kenneth and Michael J. Weiss has [sic] run a campaign of systemic harassment and intimidation against Mr. Frederickson, over a period o[f] 3 years on line;" (5) that, on December 7, 2020, "Dustin Kenneth claimed to have called Chad Grey on the phone and reported that Mr. Frederickson was living illegally at the location 603 W Willox;" (6) that "Defendants has [sic] continued to harass Mr. Frederickson now living at 12908 PALOMINO PL Wellington CO;" (7) that "Defendants have by way of tricks and deceptions directly or indirectly, prevented the building and use of a computer based production system intended for use in FM Radio as well as television video broadcast and production by Mr. Frederickson." (Doc. No. 41 at ¶¶ 4, 20, 28, 30, 32, 33, 35.)

These allegations—which either refer to "Defendants" generally, without specifying "*who* is alleged to have done *what*," or refer only to specific actions taken by individuals other than Defendant Grey—are too vague and conclusory to state a plausible conspiracy claim against Defendant Grey. Mr. Frederickson's generalized conclusions that Defendant Grey acted in concert with every other named Defendant, as well as other unknown actors, are "fine insofar as

they summarily describe what is being alleged, but they conspicuously fail to allege any facts which constitute the described conduct." *Marshall v. Dix*, --- F. Supp. 3d ----, 2022 WL 16924019, at *16 (D. Colo. 2022) (quoting *Lucas v. Bd. of Cnty. Comm'rs of the Cnty. for Larimer Cnty.*, No. 19-cv-01251-WJM-SKC, 2020 WL 5642321, at *10 (D. Colo. Dept. 22, 2020)) (internal quotation marks and alterations omitted). As such, the allegations fail to "move the claim from sheer possibility to plausibility." *Id.* (citation omitted). For that reason, Defendant Grey is entitled to qualified immunity as to this claim as well. *See Holland*, 268 F.3d at 1186.

## II.   The Non-Section 1983 Claims

### A. 42 U.S.C. §§ 1985 and 1986

Mr. Frederickson also alleges violations of 42 U.S.C. §§ 1985 and 1986. (Doc. No. 41 at ¶¶ 1, 18, 22, 24, 29, 31, 34.) Title 42 U.S.C. § 1985 prohibits various classes of conspiratorial activity. *Kush v. Rutledge*, 460 U.S. 719, 724 (1983). Here, Mr. Frederickson alleges a conspiracy "to deprive [him] of his property by way of threat, extortion and harassment." (Doc. No. 41 at ¶ 20; *see id.* ¶¶ 28, 30, 34.) These allegations implicate § 1985(3).[4]

"The essential elements of a § 1985(3) claim are: (1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom." *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993). Moreover, § 1985(3) applies only to conspiracies motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). A plaintiff must adequately plead a violation of § 1985,

---

[4] Section 1985(1) applies to persons holding federal office, and § 1985(2) applies to obstructions of federal court proceedings. Mr. Frederickson has not alleged any facts that would implicate either of these subsections.

*i.e.,* an actionable conspiracy, to state a claim under § 1986. *See Wright v. No Skiter Inc.*, 774 F.2d 422, 426 (10th Cir. 1985) (claim under § 1986 "depends on the existence of a valid claim under § 1985").

As set forth above, Mr. Frederickson has failed to allege sufficient nonconclusory facts regarding a conspiracy. Further, Mr. Frederickson makes no allegations suggesting a conspiracy motivated by racial or other class-based "invidiously discriminatory animus." *Tilton*, 6 F.3d at 686. Thus, Mr. Frederickson has failed to state a claim under § 1985. *See Hogan v. Winder*, 762 F.3d 1096, 1114 (10th Cir. 2014) (affirming dismissal of § 1985 claims, where allegations failed to plausibly show that defendants "agreed specifically" to harm plaintiff in the ways prohibited by § 1985); *Julien v. Milyard*, No. 07-cv-02176-REB-KLM, 2008 WL 5663941, at *3 (D. Colo. Sept. 15, 2008) (recommending dismissal of *pro se* plaintiff's § 1985 claims for failure to allege an actionable conspiracy or one motivated by discriminatory animus), *report and recommendation adopted in relevant part*, 2009 WL 455284 (D. Colo. Feb. 23, 2009). And, since a § 1986 claim is premised on the existence of a valid § 1985 claim, Mr. Frederickson has also failed to state a claim under § 1986. *See Aniniba v. City of Aurora*, 994 F. Supp. 1293, 1298 (D. Colo. 1998) ("Because plaintiff has not demonstrated the existence of a section 1985 conspiracy, his section 1986 claim must also fail."). Accordingly, Mr. Frederickson's claims brought pursuant to 42 U.S.C. §§ 1985 and 1986 should be dismissed without prejudice. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (stating that the dismissal of a *pro se* claim for inadequate pleading should ordinarily be without prejudice).

**B. State Law Claims**

In his Third Amended Complaint, Mr. Frederickson also appears to allege violations of Colorado statutory law. (*See* Doc. No. 41 at ¶ 36 (alleging that "Dustin Kennith [sic] and Michael J. Weiss . . . did contact Chad Grey with false reports (Colo. Rev. Stat. § 13-21-130) triggering the necessity of this law suit [sic]").) However, these allegations are not directed at any actions taken by Defendant Grey or Larimer County, the two Defendants that filed the instant Motion. As such, the Court need not address them here.

## CONCLUSION

For the reasons set forth herein, this Court respectfully **RECOMMENDS** that:

(1) The "Defendants Larimer County (Code Compliance) and Chad Grey (Building and Code Compliance Coordinator)'s Combined Motion to Dismiss Plaintiff's Third Amended Complaint" (Doc. No. 44) be **GRANTED**.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C.  636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to

make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

**DATED**: February 15, 2023.

BY THE COURT:

Maritza Dominguez Braswell
United States Magistrate Judge